IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-919-RJD |
| | ) | |
| PRAIRIE STATE GENERATING | ) | |
| COMPANY, LLC | ) | |
| | ) | |
|     Defendant. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendant's Motion to Dismiss.[1] Doc. 20. Plaintiff filed a Response and Defendant filed a Reply. Docs. 25 and 27. As explained further, Defendant's Motion is DENIED.

**Plaintiff's Complaint**

Defendant Prairie State Generating Company, LLC operates a coal-fired power plant in Washington County, Illinois. Doc. 1, ¶1. The plant utilizes "two pulverized coal boilers as its primary generation and emission units." *Id*., ¶44. On March 30, 2012, the Illinois EPA issued Defendant a "Construction Permit/PSD Approval" that allowed Defendant to operate as follows:

> CONDITION 1.6: AUTHORIZATION TO OPERATE EMISSION UNITS
>
> Under this permit, each coal boiler and associated equipment may be operated for a period that ends 180 days after the boiler first sends electricity to the grid to allow for equipment shakedown and required emissions testing.

---

[1] Plaintiff filed a Motion for Hearing on Defendant's Motion to Dismiss. Doc. 26. That request is DENIED, as the undersigned determined a hearing was not necessary to reach this decision.

> **********
>
> Upon successful completion of emission testing of a pulverized coal boiler demonstrating compliance with applicable limitations, [Defendant] may continue to operate the boiler and associated equipment as allowed by Section 39.5[5] of the Environmental Protection Act.
>
> The remainder of this plant, excluding the coal boilers, may be operated under this construction permit for a period of 365 days after initial startup of a pulverized coal boiler.

Doc. 1-4, pp. 13-14.

Section 39.5 of the Illinois Environmental Protection Act is termed the "Clean Air Act Permit Program." 415 ILCS §5/39.5. Plaintiff alleges that Defendant applied for a Clean Air Act permit in January 2010 (more than two years before it started operating); Defendant then updated its application in May 2011. Doc. 1, ¶¶62, 64. Defendant then submitted a "revised [Clean Air Act] application for the Prairie State Energy Campus" in July 2020. *Id.*, ¶64. The Illinois EPA has never issued a CAAPP permit to Defendant. *Id*.

Plaintiff Sierra Club is the "United States' largest grassroots environmental organization, with more than 730,000 members nationwide, including more than 27,000 members in Illinois." *Id.*, ¶14. Dorothy Maschal, one of those members, lives in Mascoutah, Illinois. Doc. 1-2, p. 2. Her home is approximately twenty miles northwest of Defendant's plant. *Id.*, ¶4.

Plaintiff alleges that for over a decade, Defendant has been operating and emitting harmful air pollutants without a Clean Air Act permit (termed a "Title V permit" under federal law, and a "CAAPP permit" under Illinois law). Doc. 1, ¶¶2, 4. Plaintiff further alleges that Defendant's emission of air pollutants has "contribute[d]" to a reduction of air quality" in the region, including the formation of ground-level ozone (the main ingredient in smog), which negatively affects people with asthma, the elderly, and children. *Id.*, ¶¶19, 29, 52. Defendant has significantly

"elevated ambient levels of sulfur dioxide…. [and] ambient concentrations of nitrogen dioxide" in the surrounding region; elevated concentration levels of sulfur dioxide and nitrogen oxide in the air can exacerbate asthma symptoms and decrease lung function. *Id*., ¶¶23, 51, 52.  Dorothy Maschal has asthma, and starting in 2022 her asthma symptoms became worse.  In January 2023, Defendant reported to the EPA that it had violated sulfur dioxide emission limits in the past year. Doc. 1, ¶55.

Sulfur dioxide and nitrogen oxides react with other chemicals to form fine particles in the air (e.g., "particulate matter").  *Id*., ¶53.  In addition to raising ambient levels of sulfur dioxide and nitrogen dioxide, Defendant directly emits particulate matter.  *Id*., ¶54.  Particulate matter is the "main cause of haze in the United States, and cause[s] reduced visibility." *Id*., ¶53.

Jason Bensman, a member of the Sierra Club, kayaks and takes photographs at the Mingo Wilderness Area in Missouri.  Doc. 1-3, ¶¶9, 14, 15-18.  Haze interferes with his enjoyment of the Mingo Wilderness.  *Id*., ¶¶15, 17.  Prior to the construction of Defendant's campus, the United States Fish and Wildlife Service determined that construction and operation of Defendant's plant would adversely impact visibility at Mingo Wilderness.  *Id*., ¶22.  The Missouri Department of Natural Resources identified Defendant "as a source affecting visibility at Mingo Wilderness" in 2022.  *Id*., ¶23.

### Defendant's Motion to Dismiss

Defendant contends that Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff failed to plead that Defendant has violated any laws.  For that same reason, Defendant argues that this matter is not a proper citizen suit under the Clean Air Act and therefore the Court lacks jurisdiction.  Defendant also argues that this case should be dismissed pursuant to Federal Rule 12(b)(1) because Plaintiff lacks standing.  Finally,

Defendant claims that Plaintiff's claim constitutes an "impermissible collateral attack on the PSD permit," and this Court should "abstain and defer to Illinois' permitting process." As explained further, these arguments are not persuasive at this stage of the case, where the undersigned looks to the allegations in Plaintiff's Complaint to determine whether the case may proceed in this Court.

**A. Plaintiff's Complaint adequately alleges a violation of the Clean Air Act Permit Program.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted. In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all possible inferences in favor of the plaintiff. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quotations omitted). It is unnecessary for the claimant to set out all relevant facts or recite the law in his or her complaint; however, the plaintiff must provide a short and plain statement that shows that he or she is entitled to relief. *See* FED. R. CIV. P. 8(a)(2). Thus, a complaint will not be dismissed if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Pertinent to Defendant's Motion, the Clean Air Act contains the following provisions:

> 3. Agency Authority to Issue CAAPP Permits and Federally Enforceable State Operating Permits.
>
> > a. The Agency[2] shall issue CAAPP permits under this Section consistent with the Clean Air Act and regulations promulgated thereunder and this act and regulations promulgated thereunder.
>
> **************

---

[2] The "'Agency' is the Illinois Environmental Protection Agency…" 415 ILCS 5/3.105.

> 5. Applications and Completeness
>
>> a. An owner or operator of a CAAPP source shall submit its complete CAAPP application consistent with the Act and applicable regulations.
>
>> *********
>
>> h. If the owner or operator of a CAAPP source submits a timely and complete CAAPP application, the source's failure to have a CAAPP permit shall not be a violation of this Section until the Agency takes final action on the submitted CAAPP application…
>
>> *********
>
>> j. The Agency shall issue or deny the CAAPP permit within 18 months after the date of receipt of the complete CAAPP application, with the following exceptions….(ii) the agency shall act on initial CAAPP applications within 24 months after the date of receipt of the complete CAAPP application…
>
>> Where the agency does not take final action on the permit within the required time period, the permit shall not be deemed issued; rather, the failure to act shall be treated as a final permit action for purposes of judicial review pursuant to Sections 40.2 and 41 of this Act.
>
>> x. The owner or operator of a new CAAPP source shall submit its complete CAAPP application consistent with this subsection within 12 months after commencing operation of such source.[3]
>
>> **********
>
> 6. Prohibitions
>
>> a. It shall be unlawful for any person to violate any terms or conditions of a permit issued under this Section, to operate any CAAPP source except in compliance with a permit

---

[3] Defendant submitted its initial CAAPP application more than two years before it started operating, and then it updated the application one year before it started operating. Plaintiff's pleadings do not suggest that Defendant's application was untimely.

> issued by the Agency under this Section or to violate any other applicable requirements. .....
>
> b. After the applicable CAAPP permit or renewal application submittal date, as specified in subsection 5 of this Section, no person shall operate a CAAPP source without a CAAPP permit unless the complete CAAPP permit or renewal application for such source has been timely submitted to the Agency.

Defendant argues that it has complied with this statute-despite never receiving a CAAPP permit in the 12+ years it has been operating-because it has submitted applications for the permit(s) pursuant to paragraph 5, subparagraph h (as well as paragraph 6, subparagraph b) and never been asked for additional information to complete the application. This argument ignores "a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their overall place in the statutory scheme." *Roberts v. Sea-Land Svcs., Inc.*, 566 U.S. 93, 101 (2012) (internal citations and quotations omitted). Pursuant to paragraph 5, subparagraph (j), the Illinois EPA had to act on Defendant's first application by May 2013 and the second application by July 2022. The failure to act does not mean the permit has been issued; "rather, the failure to act shall be treated as a final permit action for purposes of judicial review pursuant to Sections 40.2 and 41 of this Act." 415 ILCS §5/39.5(5)(j.).

Section 40.2 of the Environmental Protection Act reads as follows:

> If the Agency refuses to grant or grants with conditions a CAAPP permit, makes a determination regarding a submitted CAAPP application, or fails to act on an application for a CAAPP permit, permit renewal, or permit revision within the time specific in paragraph 5(j) of this Act, the applicant, any person who participated in the public comment process...., or any other person who could obtain judicial review pursuant to Section 41(a) of this Act, may, within 35 days after final permit action, petition for a hearing

before the Board[4] to contest the decision of the Agency. Section 41 of the Environmental Protection Act provides that "any person who has been denied a variance or permit under this Act, any party adversely affected by a final order or determination of the Board, and any person who participated in the public comment process…may obtain judicial review" by an Appellate Court.

Once the Illinois EPA failed to act on Defendant's first and second applications by May 2013 and January 2022 (respectively), paragraph 5, subparagraph j of the statute allowed Defendant to petition the Pollution Control Board, and then, if unsuccessful, obtain judicial review from the Illinois Appellate Court. These provisions of the Environmental Protection Act are rendered meaningless by Defendant's interpretation of paragraph 5, subparagraph h (and paragraph 6, subparagraph b). Why would any applicant ever petition the Pollution Control Board and seek review by the Appellate Court for the Agency's failure to rule on its application? According to Defendant's interpretation, the applicant could just continue operating simply because it had submitted an application.

In its Reply, Defendant again points the Court to paragraph 5, subparagraph h, which states that an applicant may operate without a permit "until the Agency takes final action on the submitted [and complete] CAAPP application." Defendant contends-and the Court agrees-that the term "final action" is not used interchangeably with "final permit action" in the statute. Final permit action is defined as

> …the Agency's granting with conditions, refusal to grant, renewal of, or revision of a CAAPP permit, the Agency's determination of incompleteness of a submitted CAAPP application, or the Agency's failure to act on an application for a permit, permit renewal, or permit revision within the

---

[4] The "'Board' is the Pollution Control Board…" 415 ILCS §5/3.130.

> time specified in subsection 13, subsection 14, or paragraph (j) of subsection 5 of this Section.

415 ILCS §5/39.5(1).  "Final action" is not defined.  Defendant contends that "final action" means to issue, modify, renew, or deny a permit.  Doc. 27, p.3.  This definition is reasonable, considering the way "final action" is used throughout the CAAPP.  *See, e.g.*, 415 ILCS §5/39.5(5)(g), (10), (13)(d), 15(b) (16)(c).  However, "final action" is used in paragraph 5, subparagraph j; it reads as follows if "take final action on" means "issue or modify or renew or deny":

> Where the agency does not [issue or modify or renew or deny] the permit within the required time period, the permit shall not be deemed issued; rather, the failure to act shall be treated as a final permit action for purposes of judicial review pursuant to Sections 40.2 and 41 of this Act.

Using Defendant's definition of "final action", the Court reaches the same conclusion: paragraph 5, subparagraph j is rendered meaningless if an applicant can simply continue operating despite the Agency's failure to issue or deny its permit within the required time frame of 24 months.

Accordingly, Plaintiff's Complaint adequately states a violation of the Clean Air Act: that Defendant is operating without a permit.  Defendant's Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is therefore DENIED.  Defendant also argues that this Court lacks jurisdiction because Plaintiff failed to allege a violation of the Clean Air Act; this basis for dismissal is similarly DENIED because the Clean Air Act allows civil suits to proceed against entities who have failed to meet "any requirement to obtain a permit as a condition of operations." 42 U.S.C. §7604(a)(1), (f)(4).  Plaintiff's Complaint alleges that Defendant failed to obtain the necessary CAAPP permit.

B. **Plaintiff alleges redressable injuries**.

To proceed in federal court, Plaintiff's Complaint must reflect that it has standing, i.e., that "it has suffered an injury in fact…that is fairly traceable to the challenged conduct of the defendant…[and] likely to be redressed by a favorable judicial decision." *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018) (internal citations and quotations omitted); Fed. R. Civ. P. 12(b)(1). Defendant contends that Plaintiff's injuries are not redressable because "the Complaint assumes a faulty premise that [Defendant] is not subject to emission limits, when in fact it is." Defendant points to the emission standards enumerated in its construction permit.[5] Defendant also notes that it is already subject to state and federal laws that establish emissions limits. However, Plaintiff alleges that Defendant exceeded federal limits for emission of air pollutants in 2021 and 2022. Doc. 1, ¶55. Moreover, Defendant's argument ignores the most obvious inference from Plaintiff's allegations: if Defendant is not operating (because it has no permit), then less air pollutants will be emitted into the surrounding areas. Injuries suffered by members of Plaintiff's group-asthma, reduced enjoyment of nature-would improve, at least until Defendant obtained a permit and resumed operating. *Sierra Club v. Franklin Co. Power of Illinois, LLC*, 546 F.3d 918, 927 (7th Cir. 2008).

Defendant's redressability argument ignores other allegations in Plaintiff's Complaint. Prior to issuing a CAAPP permit, the Agency issues a draft permit. 415 ILCS §5/39.5(8)(a). If the Agency issues a draft CAAPP permit to Defendant, Plaintiff's members can comment, object,

---

[5] Defendant claims that the statute requires it to continue operating under the terms of the construction permit, even though it has expired, citing paragraph 4, subparagraph six of the CAAPP statute. Doc. 20-1, p. 11. Paragraph 4, subparagraph 6 requires CAAPP sources to continue operating under their *operating* permits regardless of "the expiration of the State operating permit until the source's CAAPP permit has been issued." 415 ILCS §5/39.5(4)(b). The statute does not refer to operating and construction permits interchangeably; "construction permit" is defined as a "permit which is to be obtained prior to commencing or beginning actual construction…" 415 ILCS 5/39.5(1).

and advocate regarding the effect of operations under that permit. Doc. 1, ¶25; 415 ILCS §5/39.5(8), (9). If the Agency ultimately issues a permit to Defendant, Plaintiff's members will have additional opportunities to object and advocate against further operations under that permit before the Pollution Control Board and the Illinois Appellate Court. 415 ILCS §5/40.2, 41. Because Defendant continues to operate without a CAAPP permit, Plaintiff's members have no opportunity to comment and/or object on Defendant's emissions. Whether or not those comments and objections will prevail is "only a probability, but probabilities are enough to satisfy Article III's requirements." *American Federation of Government Employees, Local, v. Cohen*, 171 F.3d 460, 467 (7th Cir. 1999) (internal citations and quotations omitted); *see also American Bottom Conservancy v. U.S. Army Corps of Engineers*, 650 F.3d 652, 658 (7th Cir. 2011).

Assuming Defendant ultimately obtains a CAAPP permit, Plaintiff's allegations reflect a probability that it will emit less air pollutants under the CAAPP permit than it currently does under no permit. The construction permit-under which Defendant contends it is still operating-called for testing and reporting requirements to be further developed in the CAAPP permit. Doc. 1, ¶¶58-61. Moreover, a CAAPP permit must be renewed every five years, which would allow the Agency more frequent opportunities to review Defendant's emissions (and more opportunities for Plaintiff to object and comment on Defendant's emissions). 415 ILCS § 39.5(3)(b). To establish that Plaintiff's injuries are redressable, Plaintiff need not allege the specific levels of pollutants that would be emitted by Defendant under a hypothetical CAAPP permit; "it is enough that [Plaintiff's] concerns will be addressed *if* more stringent and frequent testing and reporting lead to less emissions by Defendant." *Franklin Co. Power of Illinois, LLC*, 546 F.3d at 927 (emphasis added).

At this stage of the case, Plaintiff was only required to make "general factual allegations

of injury resulting from the defendant's conduct." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiff's allegations indicate that a favorable decision by this Court would likely result in less emission of air pollutants by Defendant. Defendant's Motion to Dismiss Plaintiff's Complaint for Standing pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED.

**C. Plaintiff's Complaint does not constitute an impermissible collateral attack on Defendant's construction permit nor is it barred by the *Burford* abstention doctrine.**

Defendant's remaining arguments rest on a faulty premise: that Plaintiff's Complaint challenges the construction permit. Defendant claims that Plaintiff's Complaint "apparently takes issue with the provision of the [construction] permit" that states "upon successful completion of emission testing of a pulverized coal boiler demonstrating compliance with applicable limitations, [Defendant] may continue to operate the remainder of the plaint as allowed by [the Clean Air Act Permit Program]." Doc. 20-1, p. 14; Doc. 1-4, p. 14. According to Defendant, Plaintiff chose the wrong venue and waited too long to challenge the construction permit and this case is therefore an impermissible collateral attack. This argument is easily disposed-Plaintiff's Complaint does not challenge the construction permit. Instead, it challenges Defendant's continued operations after the Agency took Final Permit Action on Defendant's application for an operation permit. Doc. 1, ¶65.

Defendant makes a similar argument regarding the *Burford* abstention doctrine, arguing that "federal courts abstaining from challenges to [construction permit conditions] have noted that a case like this is a classic scenario for *Burford* abstention." Doc. 20-1, p. 20. Again, Plaintiff's Complaint does not challenge the construction permit. Moreover, the premise of *Burford* abstention is that when a state provides a venue for challenging administrative action, the federal court should abstain from disrupting those state efforts or from deciding difficult questions of state

law. *Property & Cas. Ins. Ltd. v. Central Natl. Ins. Co. of Omaha*, 936 F.2d 319, 322-23 (7th Cir. 1991). *Burford* abstention applies where the venue offered by the state for review of agency action "stand[s] in a special relationship of technical oversight or concentrated review to the evaluation of those claims." *Id*. at 223. Here, the forums that offer technical oversight are the Agency and Pollution Control Board, but Plaintiff cannot comment on Defendant's emissions or challenge an operating permit that does not exist.

## Conclusion

The Court would be remiss to deny Defendant's Motion without acknowledging a very fair point made by Defendant: to accept Plaintiff's allegations as true (which the Court must do regarding most issues in a Motion to Dismiss) means to accept that Defendant "has been operating the facility for a decade without any permit, and that the state and federal governments have simply ignored the Facility's existence." Doc. 20-1, p. 6. The undersigned could only speculate as to why Defendant can continue operating without a permit, in seeming contravention of federal and state statutes. The undersigned further acknowledges that the ultimate relief sought by Plaintiff-halting the operations of a power source for millions of people-is an extraordinary request, by any standard. Regardless, those issues are not currently before the Court. The allegations in Plaintiff's Complaint are sufficient to proceed.

Defendant's Motion to Dismiss (Doc. 20) is DENIED in its entirety. The previously imposed stay (Doc. 24) is LIFTED.[6] By separate Order, the Court will set this case for a bench trial and order the parties to submit a proposed scheduling order.

**IT IS SO ORDERED.**

**DATED:  August 9, 2024**

---

[6] Plaintiff's Motion to Lift the Stay is denied as moot. Doc. 29.

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**